Filed 11/10/25  P. v. MondragonTorres CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C100066 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF21-01751) |
| v. | |
| ALFREDO TORRES MONDRAGONTORRES, | |
| Defendant and Appellant. | |

Defendant Alfredo Torres MondragonTorres challenges a five-year sentence imposed following a no contest plea, arguing (1) he was induced to accept a plea based on an expectation of probation, and (2) he should be permitted to withdraw his plea because he did not receive the sentence he expected.  He also argues a portion of a victim restitution order and a 10 percent restitution collection fee must be stricken, and the record must be amended to reflect the dismissal of two counts.  We agree the amount of the victim restitution order must be amended, the restitution collection fee must be

1

stricken, and the record must be amended to reflect the dismissal of two counts, but in all other respects we affirm.

## BACKGROUND

MondragonTorres was charged with one count of assault with a deadly weapon with a great bodily injury enhancement alleged, and two counts of misdemeanor vandalism. He agreed to plead no contest to the assault count and admit the great bodily injury enhancement. He stipulated to the preliminary hearing transcript as the factual basis for the plea.

At the preliminary hearing, the victim testified he and a woman he had met on a dating application were sitting in the back seat of her car smoking marijuana and talking, and that eventually led to kissing and oral sex. The victim saw a man (whom he identified as MondragonTorres) looking through the car window and the woman told the victim he had to go. The victim got out of the car and "heard footsteps coming at" him and the woman yelled "Alfredo." The victim started running and MondragonTorres chased him and hit him in the head with a metal baseball bat. The victim kept running and eventually got under a car in someone's driveway. MondragonTorres looked under the car, beckoned for the victim to come out, and kept swinging the bat. He hit the victim on his ankle, his leg, his knee, the side of his body, his fingers, and his hand. The victim suffered a broken fibula and a severe cut to the back of his head. A few days later he texted the woman and asked, "Who the heck was that man?" and she responded, "It was a crazy ex thing."[1]

MondragonTorres agreed to plead no contest to the assault charge and admit the great bodily injury enhancement. Prior to the plea hearing, MondragonTorres signed a

---

[1] The woman testified she and MondragonTorres have children together. She corroborated much of the victim's testimony, with one critical difference: She stated MondragonTorres was not the man who assaulted the victim.

plea form and separately initialed all relevant terms. The form stated MondragonTorres understood the maximum aggregate sentence for the charge and enhancement to which he was pleading was seven years (four years for assault and three years for the great bodily injury enhancement). It also stated he understood he would be sentenced to not more than six years, consisting of the midterm for assault and the three-year great bodily injury enhancement. Finally, it stated the following under the heading "other terms": "Def. is pleading to PC 245(a)(1) [assault with a deadly weapon] + PC 12022.7 [the great bodily injury enhancement] for a mid-term cap of 6 years, *with the opportunity to argue for a grant of probation at judgment and sentencing with an unusual case finding under PC 1203(e)(3)*." (Italics added.) Penal Code[2] section 1203, subdivision (e)(3) provides, "Except in unusual cases in which the interests of justice would best be served if the person is granted probation, probation shall not be granted to . . . . [¶] (3) Any person who willfully inflicted great bodily injury . . . in the perpetration of the crime of which the person has been convicted."

At the plea hearing, the court confirmed MondragonTorres had signed and initialed the plea form and understood he "would be agreeing to a mid-term cap," his "exposure would be six years," and he "would be making application for probation." The court then stated, "Your attorney, [the prosecutor], and I met in chambers. You have one prior felony theft conviction. If that is all you have and nothing else on your record and otherwise you are a law-abiding citizen and gainfully employed, I would be apt to grant probation in this case. [¶] Understood?" MondragonTorres responded, "Yes."

After being advised of the potential immigration consequences of the plea and being advised of and waiving his constitutional rights, MondragonTorres pled no contest to the assault count and admitted the great bodily injury enhancement. The prosecutor

---

[2]     Undesignated statutory references are to the Penal Code.

stated the remaining charges would be dismissed at judgment and sentencing. The court referred MondragonTorres to the probation department and scheduled a sentencing hearing.

The probation department prepared a presentencing report. According to the report, MondragonTorres was interviewed and "asked to explain the current offense." He acknowledged that allegations had been made against him, but he denied any involvement and stated he "believe[d] he [was] being accused without any evidence to prove the allegations." When asked about the plea agreement, he stated "his attorney advised him to enter the plea so he can stay out of custody." When asked again about the offense, he continued to deny his involvement. He stated he wanted probation, and the probation officer "explained to the defendant his ineligibility for probation and advised him he would require an unusual case finding."

The report noted MondragonTorres was currently self-employed doing construction jobs and earned approximately $2,000 a month, and prior to that he worked for a plastering company for over 10 years. It also noted MondragonTorres had one prior felony theft conviction from 2013 that was reduced to a misdemeanor in 2017.

The probation department attached documentation to the report regarding the financial loss the victim claimed he suffered as a result of the assault, including $13,361 in lost wages and around $5,000 in "bills that [he] had to get help from [his] parents to pay since [he] was out of work."

The report noted the victim suffered serious injuries and MondragonTorres's "lack of remorse and accountability for his actions is startling." It found no facts showing this was an unusual case, and it recommended a six-year sentence.

At the initial sentencing hearing, defense counsel requested a continuance so that MondragonTorres could meet with the probation department again and speak about the current offense, and it could prepare a supplemental report. The request was granted.

The probation department interviewed MondragonTorres again and gave him another opportunity to explain his involvement in the current offense.  He stated he "did not want to talk about the offense" or "go into detail" about it, but "he fe[lt] bad for what happened to the victim."  He was again given the opportunity to provide additional information about the offense, and he again declined to provide any additional information.  The probation department once again found "no unusual case finding appears to exist" and "probation cannot be recommended," and it recommended a six-year sentence.

At the rescheduled sentencing hearing, defense counsel requested another continuance to file a sentencing statement.  The request was granted.

Defense counsel thereafter filed a sentencing statement requesting that MondragonTorres be granted probation.  The statement acknowledged MondragonTorres was ineligible for probation absent "an unusual case finding," and it argued this was an unusual case as defined by rule 4.413(c)(2)(A) of the California Rules of Court[3] because he "participated in the crime under circumstances of great provocation not amounting to a defense"—namely, he "found his wife having an affair and . . . he was overwhelmed with anger."  The statement was not accompanied by a declaration from MondragonTorres, and "statements of counsel are not evidence." (*People v. Kiney* (2007) 151 Cal.App.4th 807, 814.)

At the sentencing hearing, the court declined to grant probation.  It noted MondragonTorres was "statutorily ineligible for probation absent an unusual case finding," and it determined, "I can't make the unusual case finding given the record before me.  Even though he was given three occasions, three opportunities, to clarify his position on this, it falls short of what this Court would need to make that finding.  It goes

---

[3]      Undesignated rules references are to the California Rules of Court.

beyond heat of passion.  After hitting [the victim], he continues to hit him, breaks his leg, and continues to try to get him to come out from underneath the car.  [The victim] . . . had no previous knowledge of the relationship between defendant's wife and the defendant. [¶]  This is not justifiable violence, and *to the extent I would have been able to make an unusual case finding based on the stress to the defendant in this event, I don't have that before me in any recognizable form*."  (Italics added.)

The court sentenced MondragonTorres to the low term of two years on the assault count and three years for the great bodily injury enhancement for total of five years.  The court also imposed various fines and fees and ordered MondragonTorres to pay restitution of $18,293.28 to the victim described above and $3,843.47 to a second victim,[4] "plus a 10 percent collection fee."

MondragonTorres filed a timely notice of appeal.  He also obtained a certificate of probable cause that stated he "challenges his plea because the trial court's statement, 'I would be apt to grant probation in this case' induced [him] to make his plea on the expectation of probation."

## ANALYSIS

1.      *The Trial Court Is Not Bound by Its Indicated Sentence*

MondragonTorres argues his conviction must be reversed and he must be permitted to withdraw his plea because the five-year sentence he received was contrary to the "indicated sentence" he expected (i.e., probation).[5]  We find no basis on this record to permit MondragonTorres to withdraw his plea.

---

[4]     The second victim owned the car the first victim hid under, and MondragonTorres apparently hit the car with the baseball bat, causing damage.

[5]     MondragonTorres also argues his counsel's failure to object to the sentence and seek permission for him to withdraw his plea constituted ineffective assistance of counsel.  We elect to address MondragonTorres argument on the merits rather than

6

MondragonTorres cites *People v. Clancey* (2013) 56 Cal.4th 562 to support his argument that he should be permitted to withdraw his plea (indeed, this is the *only* case he cites in the "analysis" section of his brief). That case discussed the distinction between an unlawful judicial plea bargain (i.e., a plea bargain where the court negotiates with the defendant and agrees how to dispose of a case over the prosecutor's objection),**6** and a lawful "indicated sentence." As the *Clancey* court noted, " '[w]here *the defendant pleads "guilty to all charges* . . . so all that remains is the pronouncement of judgment and sentencing" [citation], "there is no requirement that the People consent to a guilty plea" [citation]. *In that circumstance*, the court may indicate "what sentence [it] *will impose* if a given set of facts is confirmed, irrespective of whether guilt is adjudicated at trial or admitted by plea." ' " (*Clancey*, at p. 570, italics added.)

The parties disagree over whether the trial court offered an indicated sentence within the meaning of *Clancey*. MondragonTorres appears to assume, with little analysis, that it did, and the People argue it did not. We are not convinced the trial court offered an indicated sentence. First, MondragonTorres did not " 'plead[] "guilty to all charges." ' " (*People v. Clancey, supra*, 56 Cal.4th at p. 570.) Instead, he plead guilty to one of three charges. Second, the trial court did not indicate what sentence it " ' "will impose" ' " if a given set of facts is confirmed. (*Ibid*.) At best, the trial court indicated what sentence it was "apt" to impose if a given set of facts was confirmed, which arguably is too equivocal to constitute an indicated sentence. And third, *Clancey* teaches that "a trial court that intends to offer an indicated sentence should . . . identify it as such" (*id*. at p. 576), but the trial court did not state it was offering MondragonTorres an indicated sentence.

address the ineffective assistance of counsel claim. (See *People v. Son* (2020) 56 Cal.App.5th 689, 696, fn. 1.)

**6**      Neither side suggests the trial court engaged in unlawful judicial plea bargaining.

Nonetheless, we will assume for the sake of argument that the trial court *did* offer an indicated sentence. As *Clancey* teaches, however, "*an indicated sentence is not a promise that a particular sentence will ultimately be imposed at sentencing.* Nor does it divest a trial court of its ability to exercise its discretion at the sentencing hearing, whether based on the evidence and argument presented by the parties or on a more careful and refined judgment as to the appropriate sentence. . . . *The development of new information at sentencing may persuade the trial court that the sentence previously indicated is no longer appropriate for this defendant or these offenses. Or, after considering the available information more carefully, the trial court may likewise conclude that the indicated sentence is not appropriate*. Thus, even when the trial court has indicated its sentence, the court retains its full discretion at the sentencing hearing to select a fair and just punishment." (*People v. Clancey, supra*, 56 Cal.4th at p. 576, italics added.) From the record before us, it appears clear that, at the time of the sentencing hearing, the trial court concluded that probation was not appropriate. It indicated at the plea hearing that it "would be apt to grant probation," but after MondragonTorres failed to provide information about the offense that would justify an unusual case finding, the trial court found MondragonTorres was not eligible for probation. As the trial court noted, "He is statutorily ineligible for probation absent an unusual case finding," and "to the extent I would have been able to make an unusual case finding based on the stress to the defendant in this event, I don't have that before me in any recognizable form." MondragonTorres does not challenge this finding, and it is amply supported by both the law and the evidence before the trial court.

As MondragonTorres acknowledges, because he admitted the great bodily injury enhancement, section 1203, subdivision (e)(3), rendered him ineligible for probation unless he could show this was an "unusual" case and the "interests of justice would best be served" by granting him probation. In determining whether a case is unusual, courts

apply the criteria listed in rule 4.413. (*People v. Stuart* (2007) 156 Cal.App.4th 165, 177.) Rule 4.413 lists certain "factors" that "*may* indicate the existence of an unusual case" (rule 4.413(c), italics added), including the following: "(A) The defendant participated in the crime under circumstances of great provocation, coercion, or duress not amounting to a defense, and the defendant has no recent record of committing crimes of violence; [¶] (B) The crime was committed because of a mental condition not amounting to a defense, and there is a high likelihood that the defendant would respond favorably to mental health care and treatment that would be required as a condition of probation; and [¶] (C) The defendant is youthful or aged, and has no significant record of prior criminal offenses." (Rule 4.413(c)(2).) The rule's use of the term "may" indicates the provision is " 'permissive, not mandatory,' " and a trial court " 'is not required to find the case unusual' " even if these factors are present. (*Stuart*, at p. 178.) Moreover, " '[I]f the statutory limitations on probation are to have any substantial scope and effect, "unusual cases" and "interests of justice" must be narrowly construed,' and rule 4.413 'limited to those matters in which the crime is either atypical or the offender's moral blameworthiness is reduced.' " (*Ibid.*)

Of the rule 4.413 factors that may indicate the existence of an unusual case, MondragonTorres cited only one in his sentencing statement—that he "participated in the crime under circumstances of great provocation . . . not amounting to a defense, and [he] has no recent record of committing crimes of violence."[7] (Rule 4.413(c)(2)(A).) However, this conclusory statement was provided by defense counsel, and MondragonTorres did not include a declaration as part of the sentencing statement. Thus,

---

[7]    This is the only factor that is even potentially relevant here because there is nothing in the record that suggests MondragonTorres committed the crime "because of a mental condition" or that he is "youthful or aged" (he was 34 years old at the time of the crime). (Rule 4.413(c)(2)(B), (C).)

absent information to the contrary, there were simply no facts before the court that would allow it to find MondragonTorres participated in the crime under circumstances of great provocation. The trial court thus did not abuse its discretion in finding this was not an unusual case. And with no unusual case finding, the trial court had no authority to alter the legislative mandate that a person who inflicted great bodily injury in the perpetration of a crime "shall not be granted" probation. (§ 1203, subd. (e)(3).)

2. *There Was No Violation of the Plea Bargain*

To the extent MondragonTorres challenges the plea bargain, he fails to convince us that the plea agreement was violated when the trial court failed to sentence him to probation. "A plea bargain is a contract between the accused and the prosecutor. [Citation.] Both these parties are bound to the terms of the agreement; when the court approves the bargain, it also agrees to be bound by its terms. [Citation.] Both the accused and the People are entitled to the benefit of the plea bargain." (*In re Ricardo C.* (2013) 220 Cal.App.4th 688, 698; see also *People v. Silva* (2016) 247 Cal.App.4th 578, 587 [" 'When a guilty [or no contest] plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement' "].) Here, MondragonTorres received the benefit of his bargain. He agreed to plead no contest to the assault count and admit the great bodily injury enhancement in exchange for a maximum punishment of six years and "the opportunity to argue for a grant of probation . . . with an unusual case finding." The punishment he received (five years) is one year less than the maximum punishment to which he agreed. He was also given multiple opportunities to argue for a grant of probation with an unusual case finding, but he failed to avail himself of those opportunities by twice refusing to provide the probation department with any information that would support an unusual case finding. Because MondragonTorres received precisely what he bargained for, this is not a case where he

10

would be entitled to withdraw his plea because the trial court violated the parties' plea agreement. (Cf. *People v. Walker* (1991) 54 Cal.3d 1013, 1026-1027 [violation of plea agreement generally entitles the defendant to some form of relief], overruled on other grounds in *People v. Villalobos* (2012) 54 Cal.4th 177, 183.)

      3.      *MondragonTorres Was Not Entitled to Withdraw His Plea*

MondragonTorres nonetheless argues he was entitled to withdraw his plea because he was not sentenced to probation as indicated. He cites no legal authority for the proposition that a defendant has an absolute right to withdraw a plea if the court decides not to impose an indicated sentence. In this regard we note the *Clancey* court expressly declined to "announce a rule that when a trial court offers an indicated sentence, it must advise the defendant of the opportunity to withdraw the plea if the court later decides not to impose the indicated sentence." (*People v. Clancey, supra*, 56 Cal.4th at pp. 583-584.) The court also noted that section 1018 authorizes a court to permit a defendant to withdraw a plea of guilty or no contest "for a good cause shown,"[8] but it expressly declined to determine what "standard should govern the withdrawal of a plea after a trial court declines to impose the indicated sentence." (*Clancey*, at p. 584.) Whatever standard applies, however, MondragonTorres did not seek to withdraw his plea in the trial court, and even if he had, he fails to establish he was entitled to do so.

" 'To establish good cause to withdraw a guilty plea, the defendant must show by clear and convincing evidence that he or she was operating under mistake, ignorance, or any other factor overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress.' " (*People v. Archer* (2014) 230 Cal.App.4th 693, 702.) In effect, MondragonTorres argues that he pled no contest because he mistakenly

_____

[8]     Section 1018 provides, "On application of the defendant at any time before judgment . . . , the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted."

believed he would be granted probation based on the trial court's statement at the plea hearing that it "would be apt to grant probation." In order to withdraw a plea in this circumstance, however, a defendant "must show prejudice in the form of a reasonable probability that *he or she would not have entered the plea*" absent the trial court's statement. (*People v. Dillard* (2017) 8 Cal.App.5th 657, 665, italics added; see also *In re Moser* (1993) 6 Cal.4th 342, 352 ["a defendant . . . is entitled to relief based upon a trial court's misadvisement only if the defendant establishes that he or she was prejudiced by the misadvisement, i.e., that the defendant would not have entered the plea of guilty had the trial court given a proper advisement"]; *People v. Walker, supra*, 54 Cal.3d at pp. 1022-1023 [" 'Unlike an uninformed waiver of the specified constitutional rights [i.e., to trial by jury, to confront and cross-examine witnesses, and against self-incrimination] which renders a plea or admission involuntary and requires that it be set aside, an uninformed waiver based on the failure of the court to advise an accused of the consequences of an admission constitutes error which requires that the admission be set aside only if the error is prejudicial to the accused.' [Citation.] 'A showing of prejudice requires the appellant to demonstrate that it is reasonably probable he would not have entered his plea if he had been told about [its consequences]' "].) In other words, in order to withdraw his plea, MondragonTorres would have to show the trial court's statement induced his plea. He fails to do so.

We first note there is nothing in the record that suggests MondragonTorres did not know he was ineligible for probation absent an unusual case finding. He signed a plea form stating he understood he was pleading no contest in exchange for a maximum sentence of six years "*with the opportunity to argue for a grant of probation* at judgment and sentencing *with an unusual case finding under PC 1203(e)(3)*." (Italics added.) And at the plea hearing, the trial court stated, "Your exposure would be six years. You would be making application for probation," and it then asked if MondragonTorres understood

this; MondragonTorres responded, "Yes." Moreover, MondragonTorres does *not* contend on appeal that his counsel provided ineffective assistance during plea bargaining by failing to inform him either that he was ineligible for probation absent an unusual case finding or what needed to be shown in order for the trial court to make such a finding. Furthermore, MondragonTorres signed the plea form *prior to* the plea hearing, and there is nothing in the record that suggests the trial court's statement at the plea hearing, which occurred *after* MondragonTorres had already signed the plea form, induced his plea.

For the same reason, MondragonTorres's attempt to characterize the trial court's statement as a "misrepresentation" and to then argue that misrepresentation constitutes good cause to withdraw his plea also fails (i.e., he cannot demonstrate prejudice because nothing in the record suggests the trial court's statement induced his plea). Moreover, we do not find the trial court's statement it "would be apt to grant probation" was a misrepresentation, particularly where, as here, MondragonTorres signed a plea form stating he understood was being given "the opportunity to argue for a grant of probation . . . with an unusual case finding under PC 1203(e)(3)."

MondragonTorres also supports his argument that he must be permitted by withdraw his plea by citing the rule that "a plea is valid if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances" (*People v. Howard* (1992) 1 Cal.4th 1132, 1175); and the rule that a plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts" (*McCarthy v. United States* (1969) 394 U.S. 459, 466); and the rule that courts "will permit a plea . . . to be withdrawn if it fairly appears that defendant was in ignorance of his rights and of the consequences of his act" (*People v. Miller* (1896) 114 Cal. 10, 16). With little analysis, he then states his plea was not voluntary and intelligent because he agreed to plead "with the understanding that he would likely receive probation." The record before us, however, convinces us his plea was voluntary and intelligent.

13

MondragonTorres was not promised probation; he was promised the *opportunity* to apply for probation, and he was informed that probation required an unusual case finding. There is nothing in the record that suggests he did not understand this, or that his plea was not voluntary or intelligent.

For all of the reasons stated above, MondragonTorres fails to convince us he is entitled to withdraw his plea.

4.     *The Restitution Order*

Section 1202.4, subdivision (f), provides, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims" in an "amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." "The standard of review of a restitution order is abuse of discretion. 'A victim's restitution right is to be broadly and liberally construed.' [Citation.] ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' " (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.)

As noted above, the court ordered MondragonTorres to pay $18,293.28 in restitution to the victim. As documented in the presentencing report, the victim claimed $13,361.76 in lost wages and $4,931.52 for "bills [i.e., rent, insurance, phone] that [he] had to get help from [his] parents to pay since [he] was out of work." At the sentencing hearing, the court stated, "I'm assuming he stipulated to the $18,000 restitution request from the victim. Agree, Mr. Sidhu [i.e., defense counsel]?" Defense counsel replied, "Submitted," and made no objection to the amount sought.

MondragonTorres now argues it was error to award the victim the $4,931.52 he got from his parents to pay bills while he was unable to work, because that amount was fully covered by the award of lost wages. He also argues, "To the extent that defense

14

counsel should have objected to this award, his failure to do so is ineffective assistance." The People state they are "not asserting forfeiture,"[9] and they agree the $4,931.52 awarded to the victim was improper because he would have been obligated to pay his bills even if he had not been assaulted, and the money his parents gave him was thus not an economic loss incurred as a result of MondragonTorres's conduct.

We agree with the parties. "Victims are entitled to an amount of restitution so as to make them whole but not more than their actual losses arising out of the defendant's criminal conduct." (*People v. Nichols* (2017) 8 Cal.App.5th 330, 342.) Restitution " ' "is not . . . intended to provide the victim with a windfall." ' " (*Ibid*.) Although "the court's discretion in setting the amount of restitution is broad, and it may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole" (*People v. Baker* (2005) 126 Cal.App.4th 463, 470), here the court awarded the victim what amounts to a windfall.

Although the People agree it was improper to award the victim the $4,931.52 he got from his parents, they argue that if the victim's parents gave him money to pay his bills, *they* might be entitled to restitution pursuant to section 1202.4, subdivision (k)(3)(A), which defines the term " 'victim' " to include the parents of the victim. They suggest we vacate that portion of the award and remand this case for a new restitution hearing. We decline to remand this case for a new restitution hearing. We note, however, that this does not preclude the People from seeking restitution on the parents' behalf at a later proceeding. As the court explained in *People v. Pierce* (2015) 234 Cal.App.4th 1334: "Section 1202.4 states, in relevant part, 'in every case in which a victim has

---

**9**     The People note, "Since [the victim] was not entitled to restitution for payment of his pre-existing bills and [MondragonTorres] raises ineffective assistance of counsel for failing to object, the most efficient resolution of this claim is to remand for a new victim restitution hearing."

15

suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court.' (§ 1202.4, subd. (f).) Here, though the People initially did not seek victim restitution against defendant [on behalf of three victims, those victims] are all entitled to full restitution for the economic loss they suffered as a result of defendant's conduct. (§ 1202.4, subd. (f).) [¶] The victims' right to restitution is a constitutional one, and just as it cannot be bargained away or limited by the prosecution, nor can the prosecution waive the victims' right to restitution. [Citations.] Indeed, on the motion of a victim, a court may at any time correct a sentence that is rendered invalid due to the omission of a restitution order. (§ 1202.46.) Nor may a trial court generally stray from the statutory mandate of 'full restitution.' (§ 1202.4, subd. (f); [citations].) Therefore, the prosecutor's failure to seek restitution [on behalf of three victims] at the initial sentencing hearing does not preclude seeking that restitution at a later proceeding." (*Id*. at pp. 1337-1338, fn. omitted.)

5.  *Miscellaneous Issues*

Finally, MondragonTorres argues (1) the sentencing minute order must be amended to reflect the dismissal of counts two and three for misdemeanor vandalism, and (2) the 10 percent collection fee for victim restitution must be stricken.

At the plea hearing, the People stated counts two and three would "be dismissed at judgment and sentencing." At the sentencing hearing, however, these counts were never mentioned, and the trial court did not dismiss them. As MondragonTorres notes, "When a guilty plea is entered in exchange for specified benefits such as the dismissal of other counts . . . both parties, including the state, must abide by the terms of the agreement." (*People v. Walker, supra*, 54 Cal.3d at p. 1024.) The People respond it is "not clear" whether "dismissal of the misdemeanor counts was an express term of the plea

agreement" because the plea form does not state any counts would be dismissed, and they suggest we remand the case to the trial court to address the dismissal of those counts. They acknowledge, however, that "it is likely that the parties did intend for the two misdemeanor counts to be dismissed as part of the plea agreement," and we agree, particularly where, as here, the prosecutor stated at the plea hearing that those counts would be dismissed at judgment and sentencing. Rather than remanding this issue to the trial court to address, we simply order that the sentencing minute order be amended to reflect the dismissal of counts two and three.

As for the 10 percent restitution collection fee, both parties agree that section 1465.9, subdivision (b), provides, "On and after January 1, 2022," such fees "shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (§ 1465.9, subd. (b); see also *People v. Greeley* (2021) 70 Cal.App.5th 609, 625 ["On September 18, 2020, the Governor signed Assembly Bill 1869," which " 'eliminate[d] the range of administrative fees that agencies and courts are authorized to impose to fund elements of the criminal legal system and . . . eliminate[d] all outstanding debt incurred as a result of the imposition of [identified] administrative fees.' (Stats. 2020, ch. 92, § 2)"].) Because MondragonTorres was sentenced after this date, we vacate the portion of the judgment imposing the restitution collection fee.

**DISPOSITION**

For the reasons stated herein, (1) the victim restitution order shall be amended to reduce the $18,293.28 awarded to the victim by $4,931.52, leaving a total award of $13,361.76, (2) the sentencing minute order shall be amended to reflect the dismissal of counts two and three, and (3) that portion of the judgment imposing the restitution collection fee is vacated.  Finally, the trial court is directed to prepare a corrected abstract of judgment consistent with the above and to deliver a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment and sentence are affirmed.


/s/
EARL, P. J.


We concur:


/s/
KRAUSE, J.


/s/
WISEMAN, J *

---

\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18